Nott, J.,
delivered tbe opinion of tbe court:
Tbe cause of action in this case accrued in 1848. For twenty years tbe claim has been vigorously pressed upon tbe executive departments, upon Congress, and in this court. . Tbe case has been three times tried — twice before this court as formerly constituted, and once since its reorganization in 1863. In the two former trials tbe three judges came to three different conclusions and no judicial result was reached. In tbe trial before tbe present court judgment was given against tbe claimant, and that judgment tbe Supreme Court, on appeal, lias reversed. (1C. Cls.B., p.246; 3 id., p. 451.)
In tbe history of tbe case appear two vexed questions. Tbe contract of tbe claimant bound him u to furnish all tbe material and make 221,000 cubic yards of embankment at the navy yard, Memphis, Tennessee;” which was to be made uin such manner mid place as shall he directed” by tbe government’s engineer, and to be finished “on or before the 15th July, 1847.” And ufor the materials and emhmihment made, approved of,, and received,” tbe contract further provides, tbe claimant should receive 18 cents per cubic yard as bis bills therefor were presented, but 10 per cent, was to be “ withheld from the amount of all payments on account thereof” until tbe contract should be fully performed. Out of these provisions of tbe contract tbe two vexed questions arose: tbe first was, whether tbe contractor should be paid for tbe yards of earth ■ contained in tbe embankment after it bad been accepted by tbe defendants, and not for tbe number of yards delivered; tbe second, whether tbe intermediate measurements and payments by tbe defendants *151 were not each, an acceptance of so much of tie embankment, leaving tie subsequent losses by waste, shrinkage, and tie washing of tie river, to be borne by them and not by tie claimant.
To these two questions might be added a third, relative to tie admissibility of certain ex parte affidavits used to support tie claim before Congress, and which we ruled were incompetent and inadmissible, These three questions were the only questions at law discussed or considered on the last trial, and the first two were the questions on which the three judges of the former Court of Claims were so strongly divided. Yet, as very often happens, the questions so much discussed below were not deemed important or difficult when the appeal was heard in the court above; and it only impliedly, though very clearly, appears that our rulings upon the former two stand approved and affirmed, while the third does not seem to have been brought before the appellate court. That court, however, went beyond these three questions, and reversed the judgment upon other grounds.
The first of these grounds of reversal is that the Court of Claims erred in having placed “ the right of the agents of the government to use the embankment as a roadway, and to compel him (the claimant) to dump loose earth into the current, by which it was carried away,” “upon the simple fact that those injuries were inflicted after the day at which his contract should have been completed.” And the Supreme Court then points out that “the contract declares no penalty for not completing the work by the 15th of July,” and that “ it does not even authorize the government to forfeit the contract or to terminate it.”
It certainly never .was the intention .of this court to hold, or to be understood as holding, that an ordinary contract to do certain work or build a certain structure by a certain day, containing no clause of forfeiture, could be forfeited merely because the work was not completed at the appointed time. In this case the contract was founded upon an advertisement for sealed proposals for building the embankment, and “ for constructing the foundations for nine buildings,” for furnishing the lumber therefor, &c. These buildings were to be erected on and near the embankment, and the obstructions complained of, as .we understand the evidence, arose from the work for and upon these nine buildings. It would seem to us that the want of a forfeiture *152 clause in tbe contract could not exclude tbe defendants from tbe use of tbeir own property beyond tbe prescribed time. And this was precisely wbat we intended to bold. Tbe contract was not forfeited. Up to a day certain tbe claimant was entitled to tbe full use of tbe premises. Beyond that day be might continue bis work subject to tbe use which tbe defendants might make of them own premises. In this we thought we preserved tbe rights of both parties, leaving tbe one free to erect tbeir buildings and tbe other free to carry on bis work by necessarily circuitous routes and such other disadvantages as bis own delay might have caused. But, unfortunately, this view of tbe case, and, indeed, these facts in tbe case, never reached tbe Supreme Court. When this case was last tried tbe right of appeal did not exist, and tbe rules of tbe Supreme Court bad not been promulgated. When tbe right of appeal subsequently came, tbe findings for tbe appeal bad to be framed in a manner different from tbe present one, and not so well adapted for a clear statement of tbe reasons for tbe decision in tbe court below. Added to these disadvantages, tbe right of appeal came suddenly, and this court was compelled to-prepare tbe findings for all tbe cases which bad accumulated since its reorganization. It is therefore not to be wondered at that tbe case may have gone up in such a form as to mislead tbe tribunal by which tbe decision was to be reviewed.
A second ground of reversal was in tbe supposed ruling of this court that, tbe loss caused by the settling of tbe batture, on which tbe embankment is built, was to be borne by tbe claimant. “We take it for granted,” says tbe opinion, “that tbe word {settling’ in this finding of tbe law is used for tbe settling of tbe batture.” Such was not'our meaning'. In tbe opinion read at the time this judgment was rendered it was expressly said of tbe “ settling” of tbe batture: “The fact of its sinking rests on the opinion of witnesses. The extent to which it did sink is not shown hy a particle of evidence. No computation of damages can he made from such a failure of proof P
We certainly thought that if tbe claimant bad proved this part of bis case, be should assuredly recover. But, unfortunately for him, bis evidence went to tbe whole of bis case or none. It showed tbe number of yards of earth deposited and tbe number remaining, and there it stopped. It was satisfactory and sufficient, upon bis legal theory, that be should *153 recover for all of tbe missing yards; but when tbis court beld that he should not recover for any one part of his alleged damages, there was nothing in the evidence to show what amount of damage was suffered elsewhere. We were therefore compelled to dismiss that part of the case for want of proof.
Tet there is still another ground of reversal. In view of the facts that the embankment was to be made, according to the contract, in the Memphis navy yard, and that it actually was made there, this court regarded the contract precisely as if (in the language of the Supreme Court) “ this embankment had been built on dry land.” We thought that, as the claimant did “contract and engage” to “furnish all the material and make 221,000 cubic yards of embankment at the navy yard,” he was bound to do so; and that, as “ no other charge” was to be admitted, nor allowance to be made by the United States on account of this contract, the risks were to be assumed by the contractor, and the losses to be borne by him. We thought the rule a hard one in this case, and regretted its application; but, regarding it as the sound as well as strict rule of law, felt compelled to apply it in favor of the defendants. The Supreme Court, however, has taken a more liberal view of the case. We rejoice at this decision, and, though it goes somewhat further than we had thought the law allowed, we question neither its justice nor its wisdom.
The Supreme Court seems to have attached great importance to that clause of the contract which “ obliges the party to do the work ‘in such manner and at such places as shall be directed by the said engineer or other authorized agent’” of the defendants. It is also said that “the contract is silent as to the place where the work was to be done.” Now, as the contract does specifically declare that the embankment shall be built “ at the navy yard, Memphis, Tennessee,” it is evident that, when the Supreme Court says that “ the contract is silent as to the place where the work was to be done,” it speaks with reference to the danger which might beset the work, or of the destruction to which, under certain circumstances, it might be exposed. The court, moreover, explains its meaning by illustration. “If, for instance,” it is said, “the engineer had ordered the plaintiff to commence in the middle of the river, and had caused him to dump the whole 221,000 yards in the midst of the current, where it could neither be seen nor measured, we are of opinion *154 tbat the quantity of dirt placed there should be ascertained by some other mode, and paid for.” It could, of course, make no difference to the party whether the dirt was dumped u in the middle of the river” or in any other place, so long as the attendant circumstances were such as inevitably to destroy the work as it progressed, and at the same time were such as he could not have foreseen and provided for when the contract was made. So, also, transient circumstances might affect the contract, for work might be safe and ordinary during the low water of the river, which during freshets would be destroyed as fast as made. And so I apprehend, if the officers of the government interfered with the contractor’s discretion and judgment, not leaving him free to overcome or evade the danger of the work in his own way, but making destruction for him by designating as “ the place” that part of the embankment which was then temporarily overflowed, the Supreme Court intends that “ the quantity of dirt placed there should be paid for.” The rule, therefore, to be deduced from the decision would seem to be this: Where a contractor agrees to build an entire embankment on dry land, the ordinary waste and shrinkage must be borne by him; but when he agrees to build it in such manner and at such place as the other party may designate, and the latter compels him to dump loose earth in running water, and to carry on the work in a place where it must of necessity be destroyed in whole or in part, then the contractor is not limited to the earth that remains visible and capable of being triangulated after the work is finished, but may recover for the quantity of earth delivered, less the loss by shrinkage, which would occur were the embankment built in an ordinary plane and amid ordinary circumstances. Under this decision of the Supreme Court, and upon the facts of the case, as we understand both, we think the claimant is entitled to recover. When it is said that the engineer of the defendants compelled the claimant to dump his carts into running water, it is not to be understood that he took him by the throat, or set a guard of soldiers over him, but that, under the peculiar provision of the contract, he designated this particular part of the embankment as “ the place” where the embankment was to be built, and it being at the time an unusual and extraordinary place, and one which must of necessity subject to destruction a large part of the work done thereon, the *155 claimant is not to be held to have been the insurer of his own work, and is to be paid for what he actually did.
What that amount of work actually rendered by the claimant was is not so clearly shown as could be wished. After the lapse of twenty years it is hardly to be expected that it can be made clearer. As the sinking of the batture, the amount of earth swept away by the freshet of the river, and the amount subjected to unusual compression by being used as a road-way, canuot be shown separately, the only way to arrive at the result of the damages suffered from these causes is to take the total amount of earth delivered, deduct therefrom the proper percentage on account of ordinary waste, settling, and shrinkage, and also the amount already paid for by the. defendants, and give judgment for the balance then remaining. The elaborate opinion rendered by Judge Hughes on the first trial of the case shows that the amount of loose earth so delivered by the claimant was 221,494 cubic yards. From this Judge Hughes deducted, for waste and shrinkage, 15 per cent. But this deduction was made on the assumption that the embankment was to be delivered by the claimant, and accepted by the defendants, as the monthly measurements and payments were made. This assumption, as we have seen, was not the true rule for determining the damages; and as a greater loss would fall upon the contractor by reason of the subsequent shrinkage, it becomes necessary to deduct a larger percentage. This we think should be fixed at 20 per cent., which would give 221,494 yards less 20 per cent. = 177,196; less 128,913 yards, already paid for, = 48,283 yards, at 18 cents per yard, = $8,690.
The judgment of the court is that the claimant recover $8,690.