Barney, J.,
delivered the opinion of the court.
This is a suit for a balance claimed to be due upon a contract between the plaintiff and the Government for the construction of certain timber revetments and also for the erection of certain earth embankments against the same at Fort Du Pont and Fort Delaware, Del.
The material portions of the specifications belonging to said contract, in so far as they bear upon the consideration and decision of this case, are as follows:
“27. The work to be done. — The work to be done under the specifications is about as follows:
“ The construction of about 4,500 linear feet of revetment, of which not more than 1,200 linear feet is to be two-row and the remainder one-row construction; the construction in place of two or four waste weirs as may be needed; the construction in place of one trunk sluice; the construction of about 5,600 linear feet of trestle to support 12" discharge pipe; the raising and repairing of about 10,000 linear feet of retaining embankment; and the probable repair of some of the present waste weirs at Forts Du Pont and Delaware; all as shown on attached plans, which form a part of these specifications.
“28. Timber revetment.■ — The timber revetment will be of one or two row construction as may be found necessary and *386 will be built in accordance with the plans for this work and backed up or filled in with an earth bank as shown on said plans.
“ It is estimated that not more than 1,200 feet will be rwo-row construction.
“30. Raising and ref airing banks. — The bank behind revetment along river front at Fort Du Pont will have a width on top of 4 feet. All other banks will be brought to a height of 14 feet above mean lew water, and will be of such dimensions as may be directed by the Engineer officer in charge. All earth placed in banks must be shaped up and tamped, and all work done to the satisfaction of the Engineer officer in charge.
“ 37. The work will be done at such times and places as directed by the Engineer officer in charge.
“41. In canvassing bids, the following quantities will be assumed as approximately correct:
“ 40,000 cubic yards of material in banks and revetments.
“ 100 cubic yards stone in riprap of weirs and sluices.
“ 460,000 feet b. m. yellow pine.
“ 4,950 linear feet yellow pine piles.
“ 36,000 lbs. iron.
“ 3,100 lbs. spikes and wire nails.
“The above amounts will be increased or diminished in any amount that may be found necessary, and such increase or diminution shall not be made the basis of any claim by the contractor.”
The contract further provided:
“Provided., that the approximate quantities of materials as set forth in paragraph 41 of the said specifications may be diminished by the party of the first part to the extent of 25 per cent (25).”
The claim of the plaintiff relates exclusively to and grows out of that portion of the work which involved the building of the earth embankment.
The contract provided as to payment for this character of work as follows:
“ Raising and repairing retaining banks at Forts Du Pont and Delaware, and backing up and filling in revetment.
“For material in place, tamped and shaped up, twenty-seven (27) cents per cubic yard.”
The findings show that with the exception of the 80 feet two-row construction (and that was all of that kind of *387 construction ordered) the foundation for the revetment was marshy and swampy and furnished no solid foundation to support the material necessary to rest upon it. The timbers for the revetment were merely driven into this marshy and soft-mud bottom without penetrating into any solid material. The plaintiff was required to deposit the dredged material against this one-row revetment as thus constructed, and as a result of these two conditions the dredged material thus deposited settled and spread until of itself it created a foundation upon which the embankment when completed could stand.
As a resultant the plaintiff was compelled to deposit upon said embankment a total of 57,000 cubic yards of dredged material in order to complete an embankment as directed under its contract, which measured above the plane of the original proposed line only 18,244J cubic yards. The plaintiff was paid for the latter amount of yardage only, and this suit is brought to recover for the difference between the sum thus allowed and an allowance for the 57,000 cubic yards of material necessarily and actually deposited.
The decision in this controversy depends upon the construction of the provisions of the contract relating to the payment for this work, which is f
“For material in place, tamped and shaped up, twenty-seven (27) cents per cubic yard.”
. It is contended by the plaintiff that under this provision as to payment the plaintiff should be paid the agreed price per cubic yard for all of the dredged material actually deposited in the construction of the embankment, which would, of course, include such material as sank below the plane of the original proposed line for such embankment, while on the part of the defendants it is contended that the allowance was properly made only for such material as remained after completion, in the embankment above said plane.
We have not been cited by either party to any authority deciding as to the technical meaning to be given to the phrase “ measured in place ” as used in contracts of this kind. The problem in this case resolves itself into the question whether the plaintiff, under the contract, is to be paid at the *388 agreed price per cubic yard for all of the dredged material “placed” against the revetment in order to complete an embankment of the agreed dimensions, or whether it was only to receive pay for the yardage which, to use a common expression, remained above ground.
We think much light is thrown upon this question by other provisions of the contract. Paragraph 41 of the specifications above quoted provides:
“ 41. In canvassing bids, the following quantities will be assumed as approximately correct: 40,000 cubic yards of material in banks and revetments.”
Article I of the contract has the following statement:
“Provided, that the approximate quantities of materials as set forth in paragraph 41 of the said specifications may be diminished by the party of the first part to the extent of 25 per cent.”
Thus we find that when the contract was executed the Government made an estimate therein of 40,000 cubic yards as the probable quantity of dredged material which would he necessary for the completion of the work, and further hound itself not to diminish"’this quantity more than 25 per cent, which would make 30,000 cubic yards as the minimum quantity of dredged material which the plaintiff would be ■called upon to furnish. It is unnecessary to say that if the measurement of the dredged material, for the purpose of •obtaining the yardage for which the plaintiff was to be paid, was to be made “ above ground,” such a discrepancy in the estimate and the amount actually used would not have •occurred. Neither can it be accounted for by the provision for discretion in the amount of single or double row revetment to be constructed. It will also be seen that the plaintiff was assured in the contract that it would be called upon to furnish 30,000 cubic yards of dredged material at least, while it was only paid for 18,244-1- cubic yards.
By the terms of section 37 of the specification above quoted, the plaintiff was compelled to do the work “ at such ■times and places as directed by the Engineer officer in charge.” Eor this reason it was not responsible for the marshy and swampy foundation of the place where the embankment was *389 made. If the Engineer officer selected a place where more than two-thirds of the material dredged sank beneath the plane of the- embankment, it is clearly unjust to refuse payment for such sunken material unless the plain terms of the contract compel such a conclusion.
We think the question involved in this case has been settled both by this court and the Supreme Court. In the case of Clark v. United States (3 C. Cls., 451) this court decided adversely to tlm plaintiff in a case very much like the one at bar and upon appeal to the Supreme Court this court was reversed (6 Wall., 543, 541). The contract in that case was to “ furnish all the material and make 221,000 cubic yards of embankment, etc. * * * That for the materials and embankment made, approved of, etc.,” the contractor was to be paid 18 cents per cubic yard. The following extract from the opinion of the Supreme Court will show the point decided and its application to this case:
“2. The court finds that there was waste and shrinkage of the embankment while building and a natural settling of the batture on which the embankment was built and that the loss occasioned thereby necessarily was borne by the claimant under the system of measurement adopted. And they find, as matter of law, that the contract being entire and not severable, claimant could only recover for embankment completed and that, as a necessary consequence, all losses by settling and shrinkage and the action of the current were to be borne by the claimant. . •
“We take for granted that the word ‘settling’ in this finding of the law is used for the settling of the batture. If this be so, we think the court erred in this matter also. It must be evident, if the foundation on which the embankment was built had settled lower while the building was going on, that the embankment which supplied the place of this settling was there and had become the property of (he Government. If the system of measurement did not enable the engineer to compute this accurately, they should llave done it approximately or adopted some other system. It is clear that for the embankment built by him and remaining he should be paid; and if the quantity necessary to be built had increased by this settling it was the loss of the Government, which had agreed to pay by the cubic yard and not by a certain sum for the job in the aggregate.
“3. A more difficult question is presented in reference to the question of loss by the action of the current and the *390 natural waste and shrinkage of the embankment while it was in process of completion.
“It is certainly true that if this embankment had been built on dry land the contract is of that nature that these losses would fall on claimant, and the custom of measurement found by the court probably was founded on such work. But we do not feel so clear that in a contract like this, in which no place is mentioned for its precise location, and in regard to which the contract obliges the party to do the work ‘in such manner and at such places as shall be directed by the said engineer or other authorized agent,’ the Government is only bound to pay for what earth remains visible and capable of being triangulated after the work is finished. If, for instance, the engineer had ordered plaintiff to commence in the middle of the river and had caused him to dump the whole 221,000 yards in the midst of the current, where it could neither be seen or measured, we are of the opinion that the quantity of dirt placed there should be ascertained by some other mode and paid for. As the contract is silent as to the place where the work was to be done; as there are no facts found concerning the previous negotiations as to location or character of work required, we have not sufficient means of determining whether the application of the law to this point by, the court was correct or not. We must therefore dismiss this, the most important branch of the case, with the foregoing remarks; and as the judgment of the Court of Claims must be-reversed for the errors.already mentioned, the court may on a new trial find differently or may find such facts as will enable us to determine the law of the case if it shall become necessary.” (Id., 546, 541.)
The case was returned to this court for a new trial, and upon.its rehearing here (4 C. Cls., 148), in applying the rule announced by the Supreme Court, this court said:
“Where a contractor agrees to build an entire embankment on dry land, the ordinary waste and shrinkage must be borne by him; but when he agrees to build it in such manner and at such place as the other party may designate, and the latter compels him to dump loose earth in running water, and to carry on the work in a place where it must of necessity be destroyed in whole or in part, then the contractor is not limited to the earth that remains visible and capable of being triangulated after the work is finished, but may recover for the quantity of earth delivered, less, the loss by shrinkage which would occur were the embankment built in an ordinary place and amid ordinary circumstances. *391 Under this decision of the Supreme Court and upon the facts_ of the case, as we understand both, we think the claimant is entitled to recover.”
In the Glarh case the contractor was to furnish the material and “make an embankment” and was to be paid 18 cents per cubic yard for the same when “made.” In the case at bar the plaintiff was to make an embankment and be paid 27 cents per cubic yard for the same “ measured in place.” We can see no difference in fact in the two methods of measurement.
The case of Lyon v. United States (30 C. Cls., 353) is in accord in principle with the Glarh ease. In that case the contract was “ to furnish, deliver, etc.,” earth filling around the base of the Washington Monument, and the specifications stated that “ an accurate topographical map had been made of the grounds, etc.,” and that “ this map will be used in determining the amount of filling deposited by the contractor by calculations of the contents of the masses deposited upon the present existing surfaces.” The court allowed the claimant for “shrinkage” in the material furnished under this contract after its deposit, and upon this point the court said:
“While the quantity of earth filling so deposited was to be determined ‘ by calculations of the contents of the masses deposited upon the present existing surfaces,’ shown by the map, the manner of so ascertaining the quantity can not be construed to constitute an agreement to build 250,000 cubic yards of embankment, more or less.
“ If it were so construed there would be some conflict between the specifications and the contract proper, for the consideration of 39 cents per cubic yard clearly has reference to the quantity furnished, delivered, and deposited, and not to the cubic contents of an embankment.” (Id., 364-365.)
While a custom for such rule for measurement was found in that case, the above extract would seem to indicate a right of recovery under the contract regardless of such custom.
The case of Meath v. United States (No. 15756), decided by this court December 18, 1893, but in which no opinion was filed, is particularly applicable and controlling in the decision of this case. That case was a suit to recover for *392 material which sank below the surface in the construction of a levee upon' the Mississippi Biver. The contract provided. that payments were to be based “ on measurement of levee as finally located and constructed under the direction of the engineer in charge.” The specifications provided that the “ contractor must build the embankments one-fifth higher than the height marked on the stakes (unless otherwise directed by the engineer) for shrinkage or settling ”; and, further, “ Nothing will be paid for settling or shrinkage, but the levee will be paid for as estimated up to the true grade.” The engineer officer in charge of the work located the levee at a place where the foundation was so wet and swampy that a large part of the material deposited sank beneath the surface. In fact, it is a striking coincidence that about the same proportion sank beneath the surface as in the case at bar. In that case, upon the contract and facts as stated, this court gave the plaintiff judgment at the rate per cubic yard provided in the contract for such sunken material so deposited by the contractor, and its amount was estimated in the same manner as in this case. As before stated, no opinion was filed in that case, but there is a somewhat argumentative statement in one of the findings as follows: “/$'inkage is not to be confounded with settling and shrinkage. ”
That case was decided after the decision of the Supreme Court in the Clark case, and rro appeal was taken by the Government. It will certainly not be denied that the contract and facts in the case at bar present a much stronger case in favor of the plaintiff than in the Meath case.
It follows from the foregoing that the plaintiff should recover pay for the differences between the quantity of dredged material necessarily and actually used in the construction of the embankment and the quantity which appeared above the surface of the ground, the latter being the amount for which it has already received payment.
Judgment is therefore ordered for the plaintiff in the sum of $10,463.98.
Howry, J., was not present when this case was heard and took no part in its decision.