## WILSON v. SALT LAKE CITY.

No. 3135.   Decided July 13, 1918.   On Appeal for Rehearing Aug. 22,
1918.   (174 Pac. 847.)

1. APPEAL AND ERROR—REVIEW—WEIGHT OF EVIDENCE.   Where evidence was conflicting, and there was substantial evidence to sustain them, findings will not be disturbed by appellate court.[1] (Page 508.)

2. WORK AND LABOR—EXTRA MATERIALS—CONTRACTOR'S RIGHT TO RECOVER.   A contractor may recover the reasonable value of extra materials and labor furnished regardless of the provisions of the contract, where such work required by the defendant city was wholly unnecessary and without the contract and not contemplated by the parties.[2]   (Page 508.)

3. CONTRACTS — CONSTRUCTION — "EXTRA WORK" — "ADDITIONAL WORK."   The term "extra work" in a construction contract applies to work of a character not contemplated by the parties and not controlled by the contract, while "additional work" is such as may fairly be presumed to arise in the construction, and is within the contract, although not included in the plans and specifications. (Page 516.)

4. INTEREST—COMPUTATION—DEMAND.   In an action to recover under a construction contract for material and labor furnished, interest is recoverable from the date the claim was duly presented to the defendant city, whether the claim was unliquidated or not.[3] (Page 517.)

On Application for Rehearing.

5. APPEAL AND ERROR—RETENTION OF JURISDICTION OF TRIAL COURT AFTER APPEAL PERFECTED.   District court had jurisdiction to make an order extending the time for serving and filing the bill of exceptions, though order was made one month after perfecting appeal.[4]   (Page 518.)

---

[1]*Goan* v. *Ogden, L. & C. R. Co.*, 51 Utah, 285, 169 Pac. 949.

[2]*Utah Savings & Trust Co.* v. *Salt Lake City et al.*, 44 Utah, 150, 138 Pac. 1165; *Salt Lake City* v. *Smith*, 104 Fed. 457, 43 C. C. A. 637.

[3]*Nichols* v. *Railway Co.*, 7 Utah, 470, 27 Pac. 693; *Fell* v. *Union Pac. Ry. Co.*, 32 Utah, 101, 88 Pac. 1003, 28 L. R. A. (N. S.) 1, 13 Ann. Cas. 1137; *Kimball* v. *Salt Lake City*, 32 Utah 253, 90 Pac. 395, 10 L. R. A. (N. S.) 483, 125 Am. St. Rep. 859.

[4]*State* v. *Carter*, 52 Utah, 305, 173 Pac. 459.

Appeal from the District Court of Salt Lake County, Third District; *Hon. George G. Armstrong,* Judge.

Action by R. E. Wilson against Salt Lake City, a municipal corporation.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*W. H. Folland,* City Atty., and *H. H. Smith* and *W. W. Little* Asst. City Attys., for appellant.

*Wm. McCrea* and *P. L. Williams* for respondent.

CORFMAN, J.

The plaintiff commenced an action to recover from the defendant certain amounts alleged to be due and owing him for extra labor and materials furnished in the construction and completion of a reservoir for the defendant. The reservoir was designed for the purpose of supplying the inhabitants of Salt Lake City with water.

A written contract had been entered into between the parties on October 5, 1914, and the construction work was commenced by plaintiff on or about October 15, 1914, and thereafter continuously prosecuted until on or about December 20 of the same year, when owing to weather conditions, work was suspended until the early spring months of 1915, when it was again resumed and continued until the completion of the reservoir, September 28, 1915.

Under the contract entered into between the parties the plaintiff was to do all the work and furnish all the materials (computed on approximate quantities) necessary to construct the reservoir in a proper and workmanlike manner according to the plans and specifications furnished by the defendant city. Payments were made by the defendant (hereinafter for convenience referred to as the city), based on par-

tial estimates as the work progressed, until the total sum
of $40,451.53 had been paid to the plaintiff by the city on
the contract, which sum was all the city was willing to con-
cede that the plaintiff was entitled to for the work and labor
furnished for the completed reservoir. The plaintiff claimed
he had not been fully paid and after presenting his claim in
due form for $16,517.47 over and above the amount paid by
the city, and the city having rejected his claim, brought suit
therefor in the district court for Salt Lake County, upon
which he obtained, after a trial to the court without a jury,
judgment against the city for $12,775.57, with interest and
costs. From this judgment the city appeals.

The complaint sets forth three separate causes of action.
The first cause of action involves the labor and material fur-
nished by the plaintiff under the contract for the con-
struction of the reservoir. While the evidence ad-
duced by the respective parties is conflicting as to the
amount of labor and material furnished, the trial court
found for the plaintiff, and on this cause of action rendered
a judgment against the city upon the several items alleged
to be due the plaintiff, totaling the sum of $4,448.24. We
find there is substantial evidence in support of all the find-
ings with respect to the plaintiff's first cause of action, and
therefore this court has not the power to and will not disturb
the same. *Goan v. Ogden, L. & C. R. Co.,* 51 Utah, 285, 169
Pac. 949.

The second cause of action involves items in the furnishing
of labor and material by plaintiff for the completion of the
reservoir, alleged not to be within the terms of, nor contem-
plated by the parties under, the contract. The
plaintiff alleged that the city engineer improperly and
unnecessarily required him, when the work was sus-
pended in 1914, to put earth on the slopes of the excavation
and embankment of the reservoir to protect them during the
winter season and until the work of construction might be
resumed, in 1915, for which plaintiff claimed $8,135.52 after
giving a credit of $650.16 paid by the city; a claim for re-
moving dirt, in the sum of $40, that was disallowed by the

trial court; a claim for $48 extra labor occasioned by an error on the part of the city in setting grade stakes, and for $25 the price of a hand rail. The last two items are confessed by the city on this appeal. The trial court again found the issues in favor of the plaintiff, and rendered judgment against the city on the several items allowed, the sum total being $8,208.53. As before, we find substantial evidence in the record to sustain the findings of the trial court both as to the amount of labor furnished and that the price charged therefor was reasonable.

The plaintiff testified that the charge made therefor against the city was but the actual cost to him of the labor performed plus 15 per cent. for engineering and reasonable profit. While there is some conflict in the testimony as to the amount of extra labor performed in the cleaning of the slopes of the reservoir we think the great weight of the evidence supports the plaintiff's contention and the finding made by the trial court, both as to the amount of extra labor and reasonableness of the charge made therefor.

However, it is contended by the city that, conceding the work now under consideration to be extra, the cleaning of the slopes of the reservoir comes within the contract entered into between the parties as to the price, and should be paid for at the contract price of thirty-five cents per cubic yard under certain provisions of the contract which read:

"The prices named in the proposal attached hereto are for the completed work, and include the furnishing of all materials, and all labor, tools, and appliances, and all expenses, direct or indirect, *connected with the proper execution of the work, in accordance with the plans, profiles, and specifications for the work,* and of maintaining the same until it is accepted by the board of commissioners. (Italics ours.)

"Excavating shall include the work of removing all earth, stone, loose rock, clay, shale, cement, hardpan, boulders, and all other materials *necessary to be removed* in excavating for the reservoir, pipes, etc. (Italics ours.)

"The contractor shall do such extra work in connection with the work herein contracted to be done as the city en-

gineer may direct, and the price thereof shall be according to the schedule of prices in this contract, except in so far as it shall be expressly stated on the face of the order that force accounts will be allowed. No allowance for extra work of any kind shall be made unless the contractor shall have been furnished with an extra order authorizing such work, signed by the city engineer and approved by the commissioner of streets and public improvements.

"On or before the tenth day succeeding the completion of the extra work authorized by an extra work order, the contractor shall present to the city engineer the original extra work order, on the back of which shall be a full and complete itemized statement of such extra work, etc., together with date of the completion of the work mentioned therein. * * * No payment shall be allowed for any extra work for which the contractor fails to present the extra work order hereinbefore mentioned."

There are other provisions, not necessary to here set forth, contained in the instructions to bidders, the proposal and the specifications, all of which are embodied within and made a part of the contract, to the same effect, namely, that the work contemplated under the contract is to be confined to and done *"in accordance with the plans, profiles, and specifications for the work."* (Italics ours.)

The plaintiff contends, and throughout the trial in the district court prosecuted his case on the theory, that the labor of extra excavation and removal of earth from the slopes of the reservoir was improper, unnecessary, and not at all contemplated under the contract. This contention, directly opposed to that of the city, finds much support in the testimony, and the trial court found:

"That at the time of undertaking said work the plaintiff procured the services of a competent engineer to advise and direct the prosecution of said work, and that the said engineer devised a plan, which the plaintiff adopted, for the construction of said embankment, which was a practicable plan, and, if the plaintiff had been permitted to pursue it, * * * a very small quantity of material would have been re-

quired to remove in dressing down said slopes to the true line. * * * That the defendant, by its engineer and his assistants, interfered with the said construction as it was being prosecuted, notwithstanding plaintiff's protests, * * * and required the plaintiff to dump material to a large and excessive and unnecessary amount within the true lines of the finished slopes of the embankment. * * * That the said interference * * * was wholly unwarranted and resulted in great additional cost and damage to the plaintiff in removing the said excessive material. * * * That in prosecuting said work of removing said material and bringing the said slopes to the true line * * * incurred a cost to the plaintiff of $7,724.54, exclusive of the cost of any original excavation in completing said reservoir, carried on in connection with the removal of said excessive material, and exclusive of the cost that the plaintiff would have incurred in cleaning down and bringing the said slopes to the true line, and which he would have been required to have done to complete the said reservoir, if he had been permitted to have prosecuted said plan adopted by him and which was devised by his said engineer.''

One of the plaintiff's witnesses, a Mr. Bigler, who was employed on the work by plaintiff, and who for twenty years had followed the occupation of general construction in railroad building, canal and street work, and who was experienced in the building of embankments for railroads, canals, and reservoirs, testified, concerning the extra labor claimed by plaintiff in removing the earth from the slope of the reservoir, as follows:

''In getting that earth down the slope we had to handle it four or five times, shoveling it over and throwing it down. I am familiar with the cost of excavating and embankment work from having lots of experience along that line. I should judge it would cost three or four times as much to go up and take that dirt off the slopes as it would if it had been taken out as we came down with our slope.''

Testimony of like import was given at the trial by other witnesses, and we are therefore bound by the findings of fact made by the district court to the effect that the plaintiff was

not only improperly directed and unnecessarily required to do this work by the duly authorized officers and agents of the city, but that he performed the labor under protest and the charge made therefor against the city was reasonable.

But conceding the plaintiff's contention to be true, that this work was improper and unnecessarily required of the plaintiff by the city, it is next argued and contended by the city that "as a matter of law there is, and can be, no implied contract with the city for this work. If it is not covered in the contract—is not extra within the contemplation of the contract—the city should have entered into a separate and distinct contract for the performance of the work."

It is our opinion that there is some force to this contention. However, we do not think the views expressed in the opinion of Mr. Justice Frick, in *Utah Savings & Trust Co. v. Salt Lake City, et al.*, 44 Utah, 150, 138 Pac. 1165, and many other cases cited in appellants' brief, are applicable to the facts in this case. In the Utah case cited this court held that under the provisions of section 286 and 313xl, Comp. Laws Utah 1907, contracts for the erection of public improvements should not be awarded except to the lowest responsible bidder, after publication of notice, etc., and that cities should not make such improvements except by complying with these provisions of the statute. In that case the city was proceeding to make certain dams and a reservoir for increasing its water supply without advertising for bids or complying with any of the formalities required by the statute. The question of payment for extra material or labor furnished, after full performance of a completed contract entered into in full compliance with statutory provisions, was not involved, considered, or passed upon by the court.

The question now before the court is whether or not the plaintiff is entitled to recover the reasonable value of extra labor improperly and unnecessarily required of him to be performed, under protest, by direction of the city's duly authorized agents and officials.

The decisions bearing on the question are not in harmony, nor do they render an answer entirely free from doubt. An express provision of the contract between the parties, which we again quote, provided:

"No allowance for extra work of any kind shall be made unless the contractor shall have been furnished with an 'extra work order' authorizing such work, signed by the city engineer and approved by the commissioner of streets and public improvements."

The plaintiff here is seeking to charge the city for the extra work performed by him at a price largely in excess of that provided for in the contract between the parties. While the facts found by the trial court are in harmony with the contention that the price claimed is reasonable and no more than the actual cost to plaintiff plus a reasonable charge for superintendence and profit, his legal right to so charge in the face of the express provisions of the contract above quoted may be questioned with some degree of consistency, both as legal propositions and in the interests of the general tax-paying public.

Unjust and exorbitant demands are so often made for extra labor by those undertaking the work of constructing public improvements that the text-writers have frequently taken occasion to comment concerning the claims of contractors for extra labor performed. We quote:

"Municipal corporations have so frequently been defrauded by exorbitant claims for extra work under contracts for public improvements that it has become usual to insert in contracts a provision that the contractor shall not be entitled to compensation for extra work unless it has been ordered in a particular manner." 19 R. C. L. 1077 (sec. 362).

"Experience, however, keeps a dear but a good school, and those who have a broader knowledge of such transactions agree that, by some mysterious process of calculation, things valued afterward in that way usually cost a great deal more than if contracted for beforehand. In general, the ordering of the extra work must be made by the properly qualified agent of the person to be charged." 4 Elliott on Contracts, section 3740.

Many of the states have express statutory provisions precluding the recovery for extra labor unless the formalities of the statutes are complied with. Speaking of these statutes, it is said, in section 362, 19 R. C. L.:

"Statutes restricting recovery for extra work have no application, however, to a case in which the representatives of the municipality require the contractor to perform, as part of his contract, work which he rightly contends is not called for thereby. When the municipal representative, without collusion and against the contractor's opposition, requires the latter to do something as covered by his contract, and the question whether the thing required is embraced within the contract is fairly debatable and its determination surrounded by doubt, the contractor may comply with the demand under protest, and, if it subsequently turns out that he was right, recover the additional expense he has been put to."

Doubtless, in the absence of statutes, it was intended by the quoted provisions of the contract entered into by the parties to this action to safeguard against unjust claims and demands being made against the city for extra labor that might be required from time to time for the construction of a completed reservoir. Counsel for the city have cited in their brief, and are very insistent in their argument before this court, that the plaintiff cannot recover for the extra work claimed because he proceeded to do the work without first complying with the provisions of the contract requiring him to procure a written order authorizing the work signed by the city engineer and approved by the commissioner of streets and public improvements. The following cases seem to support this contention: *Schneider v. City of Ann Arbor*, 195 Mich. 599, 162 N. W. 110; *Thomsen v. City of Kenosha*, 165 Wis. 204, 161 N. W. 735; *Callan v. Peck*, 37 R. I. 227, 91 Atl. 34; *Watterson v. Mayor, etc., of Nashville*, 106 Tenn. 410, 61 S. W. 782; *Campau v. City of Detroit*, 106 Mich. 414, 64 N. W. 336.

In the latter case the Michigan court says:

"In this case the plaintiff had but one contract with the city, and that was the one awarded to him after competitive bidding. If the demand of the superintendent was not justified by the contract, he had the right to refuse to proceed, but had not the right to demand com-

pensation other than that provided by the contract. He was bound to know that neither the superintendent nor the board had authority to bind the city by any new contract with him, or by any substantial deviation from the contract which he had executed. If he proceeded, he must be held bound by the terms of the contract, and limited to the compensation provided thereby.''

McQuillin in his excellent work on Municipal Corporations, section 1946, p. 4183, col. 4, speaking of this class of contracts, says:

"If the contractor does extra work not required by the contract and without authority from the municipality, he cannot recover therefor, as work done by direction of a municipal officer without power to order such work done, although he may be the supervisor appointed by the municipal corporation to superintend the execution of the contract. To bind the municipality for extra work, the authority to perform such work must be given in the manner prescribed by law or in accordance with the terms of the contract, as, for example, where the order is to be given in writing, or where the contractor is required to submit a written statement of extra work and claim for extra work.''

Judge Dillon, in his treatise on the law of Municipal Corporations, to which we are referred by respondent's counsel, entertains the same view. Dillon on Municipal Corporations (5th Ed.) section 813, p. 1229.

The difficulty with the contention made by the city in this case, and the application of the rule, however, is that under the findings of fact made by the trial court the extra work claimed by plaintiff was wholly unnecessary and without the contract, and not contemplated by the parties. In such cases, while the authorities and decisions are not uniform, we think the best considered cases hold, and the great weight of authority is to the effect, that the contractor may recover the reasonable value of extra materials and labor regardless of the provisions of the contract. Dillon on Municipal Corp., section 813, pp. 1225, 1226, and 2728; 19 R. C. L., section 362; McQuillin, Mun. Corps. (5th Ed.) vol. 4, section 1946, p. 418; *Salt Lake City v. Smith*, 104 Fed. 457, 43 C. C. A. 637; *United States v. Barlow*, 184 U. S. 123, 22 Sup. Ct. 468, 46 L. Ed. 463; *Clark v. United States*, 6 Wall. 543, 18 L. Ed. 916; *Hottel v. Poudre Valley Reservoir Co.*, 41 Colo. 370, 92

Pac. 918; *International Contract Co. v. City of Seattle,* 70 Wash. 504, 127 Pac. 115.

There seems to be a distinction made under the authorities between extra work and additional work in cases of this kind. The term "extra work" applies when the work is of such a character that it cannot be said to have been in contemplation by the contracting parties, while   3 "additional work" may be said to be that class of work that may fairly be presumed to arise in the course of a proper construction of the improvement, although not included by the plans and specifications or specifically mentioned or referred to in the contract.

In this case no mention was made in the contract concerning the extra work plaintiff was required to do for the city under the direction of its officers, in removing the earth from the slopes, and the facts found by the trial court were to the effect that the extra work was improper and wholly unnecessary. It follows, therefore, that the findings of the trial court with respect to this labor must be sustained, both as to facts and as a matter of law.

The third cause of action involved the price of certain iron pipe furnished by the city to the plaintiff for use in the construction of the reservoir. The court found that the furnishing of the iron pipe under the plans and specifications was at a cost to plaintiff of $33 per ton. Plaintiff was required to put in an extra amount of pipe. This the city furnished, and charged the plaintiff therefor at the rate of $55 per ton, deducting the same from moneys due plaintiff. The difference in price amounted to $118, for which plaintiff was allowed judgment.

While the evidence was in conflict as to whether or not the city loaned the pipe to plaintiff or furnished it to him to be paid for at a reasonable price, we think the testimony bearing on the question is sufficient to sustain the trial court's finding and must be sustained.

The trial court, in rendering its judgment, included interest on the several sums awarded the plaintiff from November 1, 1915, down to and including the date of the

judgment, December 30, 1916, amounting to $1,187.24.          4
The city contends that the several amounts for which
judgment was rendered were unliquidated demands against
the city, and therefore an allowance of interest prior to the
rendition of the judgment was improper. This court has not
adhered to the rule contended for by counsel, and as an-
nounced in *Nichols v. Railway Co.*, 7 Utah, 470, 27 Pac. 693,
cited by counsel in their brief, upon the question of dis-
allowance of interest in unliquidated damage suits.

In *Fell v. Union Pac. Ry. Co.*, 32 Utah, 101, 88 Pac. 1003,
28 L. R. A. (N. S.) 1, 13 Ann. Cas. 1137, the Nichols and
Lester Cases were expressly overruled upon the subject of
disallowing interest in cases of unliquidated damages. In an
exhaustive and well-considered opinion written by Mr. Jus-
tice Frick, speaking for the court, it is said:

"The true test to be applied as to whether interest should be al-
lowed before judgment in a given case or not is, therefore, not whether
the damages are unliquidated or otherwise, but whether the injury and
consequent damages are complete and must be ascertained as of a
particular time and in accordance with fixed rules of evidence and known
standards of value, which the court or jury must follow in fixing the
amount, rather than be guided by their best judgment in assessing the
amount to be allowed for past as well as for future injury, or for ele-
ments that cannot be measured by any fixed standards of value. The
same rule, under the same conditions, would of necessity apply to
actions for breach of contract."

The rule thus announced was later followed in the case of
*Kimball v. Salt Lake City*, 32 Utah, 253, 90 Pac. 395, 10 L. R.
A. (N. S.) 483, 125 Am. St. Rep. 859, an action involving
unliquidated damages by reason of the changing of a street
grade by the city, upon principle clearly analogous to the
case at bar, wherein the opinion says:

"At the time the claim was presented the injury and damages were
complete. * * * If, therefore, respondents were entitled to compensa-
tion at all, they were entitled to it from the time of the completion of
the work, at which time the entire injury to the property was com-
plete, * * * or, in any event, from the date of filing the claim."

The plaintiff here duly presented his claim against the city,
November 1, 1915. From that time clearly within the prin-

ciples announced in the Fell and Kimball Cases the trial court properly allowed the plaintiff interest at the legal rate on the several amounts for which judgment was awarded him.

For the reasons stated, the judgment of the district court is affirmed, with costs to respondent.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.

On Application for Rehearing.

CORFMAN, J.

Appellant has made an application for a rehearing upon the grounds that duplications were made by the district court in awarding respondent judgment upon the several causes of action set forth in his complaint. The matters relied on and presented by appellant were given careful consideration before formulating the opinion heretofore written by this court. We were then, and are still, of the opinion that the contention of appellant cannot be sustained. The testimony, as disclosed by the record, clearly shows that the findings of the district court are amply supported by the testimony, and that there are no duplications in the awards made by the judgment of that court. Appellant's application for a rehearing is therefore denied.

Prior to a hearing upon the merits before this court the respondent moved to strike the appellant's bill of exceptions from the record and files in the case upon the grounds that the orders made by the district court extending the time for the preparation, serving, and filing of the appellant's bill of exceptions beyond the time of the perfecting of the appeal to this court were in excess of jurisdiction, and therefore null and void, and that the proposed bill of exceptions had not been served within the time allowed by law or by any valid order extending the time. The motion of respondent was denied, upon being presented to and determined by this court, before a hearing upon the merits. We

then stated that our reasons for so doing would be more formally assigned upon our rendering an opinion upon the merits of the case. Through an oversight the writer of the opinion upon the merits neglected to do so, and we are reminded of the omission by the appellant at this time.

With reference to this matter the record shows: That the judgment of the district court in this case was duly filed and entered on December 30, 1916; that notice of the filing and entry of the judgment was served upon the appellant January 18, 1917; that commencing February 15, 1917, orders were made by the district court from time to time extending time for the appellant in which to prepare, serve, have settled, and file a bill of exceptions in the case. The last order, extending the time to August 31, 1917, was made by the district court July 23, 1917. The appeal was perfected June 29, 1917. The case, therefore, was, at the time the last order was made by the district court, on July 23, 1917, before this court for all purposes connected with and involved on the appeal. However, we held that, for the purposes of properly presenting the case before this court for review, the district court had not lost jurisdiction to extend the time for preparing, serving, filing, and settling the bill of exceptions and certifying the same to this court so that the case might be reviewed and considered by us on the merits. In denying respondent's motion we adhered to the rule announced in 3 C. J. pp. 1254, 1367, and in the recent case before this court of *State v. Carter*, 52 Utah, 305, 173 Pac. 459.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.