Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff entered into a contract with the Government to furnish all necessary labor and materials for and to install certain steel sash and incidentals in four designated buildings in accordance with specifications made a part of the contract. The contract was dated the 14th day of September, 1919, and related to buildings then in course of construe *694 tion by other contractors. The sash could not be installed until the buildings were ready for it. There was much delay, and not until the fall of 1922 was plaintiif’s work completed. To what extent the Government should be held responsible for these delays and the damages occasioned to plaintiff By reason of them is the important question. A recital of the facts makes clear the conclusion that the Government did not undertake that the buildings would be ready for plaintiff’s work at the “ approximate dates ” stated in the specifications. Bids were asked for this steel-sash work under specifications furnished to bidders. These showed on their face that the Government had awarded a contract to the American Bridge Company for the provision and erection of the structural steel frames for the several buildings, and the bidders well knew that the buildings were to be erected by one or more contractors. As to the form of their proposals, bidders were informed, among other things, that they were “ expected to read the specifications with special care and to observe all of its requirements.” Also that they were expected to examine the site of the proposed work and inform themselves thoroughly of the actual conditions and requirements before submitting proposals.
Under the heading of “time of completion” the bidders were required to state the number of calendar days required to complete the steel sash work “ after notification that the building is ready for installing the work,” and under this same heading the specification stated “ approximate dates ” when the structural steel work of the four buildings would be ready to receive the steel sash, with the further statement that these “ approximate dates ” are “ for the information of bidders only and are not guaranteed,” the dates so stated being August 1, 1919, October 1, 1919, and September 1, 1919, for the severally named buildings, the last date mentioned applying to two of them. The specifications stated that the Government would notify the contractor “ when these buildings are ready for the steel-sash work ” and when so notified the contractor should proceed to install it. When to this is added the requirement already stated that the bidders should state the number of days they would require *695 for their work “ after notification that the building is ready ” for it, there would seem to be no room for the contention that the approximate dates stated were binding upon either party. And when it is observed that the contract itself was made on September 14, at which time the stated approximate dates had already expired as to three of the buildings and lacked about two weeks of expiration as to. the fourth, and it is further observed that the plaintiff several months later was inquiring as to when the buildings would be ready, evidencing a desire to get its materials together, we think there can be no serious contention that either party understood or agreed that the work would or could be begun at any definite date.
Besides these considerations it may be said the contract provided that the Government could make changes and thus interrupt the stipulated continuity of the work. See H. E. Crook Co. case, 270 U. S. 4. And some months after the original contract was made a supplemental contract was entered into that involved the price to be paid for changes. It can not be held that the contract, provided definite dates for the plaintiff’s work to begin, and as was said by the Supreme Court in the Crook case, supra, “it was obvious on the face of the contract that these dates were provisional.” In the cases of Lange do Bergstrom, 61 C. Cls. 666, and 61 C. Cls. 682 (certiorari denied by Supreme Court, October 18, 1926), the court considered the effect of provisions in a contract very similar to that in the instant case and said it was manifest from the terms of the contract that the parties had in contemplation that there might be delays (in that case incident to securing the materials), and in the instant case while awaiting other contractors. In the Crook case the contract provided that plaintiff would commence work when a copy of the contract was delivered to the contractor, while in the instant case the provision is that plaintiff would complete its work on the four several buildings within a stated number of days “ to be figured from the date of receipt of written notice * * * that the respective buildings are ready for the * * * sash.” This feature is therefore quite as plainly brought out in the instant case as it appeared in the Crook case, and in the latter case it was said by the *696 Supreme Court: “When such a situation was displayed by the contract it was not to be expected that the Government should bind itself to a fixed time for the work to come to an end, and there is not a word in the instrument by which it did so, unless an undertaking contrary to what seems to us the implication is implied.” For delays occurring prior to notification that the building was ready there can be. no recovery. Three of the buildings were completed after more or less delay. They were accepted and payment for them was received without objection, except as to a retained percentage hereafter mentioned.
But the facts further develop a situation which we think is not governed by what was said in the Crook case or presented in any of the other cases cited. The plaintiff was notified in January, 1922, that the heat-treatment building was ready for the installation of the sash and proceeded to perform the work. The work on some of the buildings had commenced in or about March, 1919, and was completed as already stated. We may dismiss consideration of any delays incident to these three because the evidence relates to the fourth, the heat-treatment building, which was the last to be completed. It was not until January 5, 1922, that plaintiff was notified by the Government’s agent that this building was ready for the steel sash and was requested to install it. Upon receiving this notification plaintiff promptly brought its men and equipment to the site and actually began work on January 16. If it had been allowed to proceed, uninterruptedly, it would have concluded its work within the contract time of 40 days, but plaintiff was subjected to a series of suspensions or interruptions by the Government, such as an order to “ discontinue immediately ” from the Navy Department on February 9, followed by an order on February 17 to resume, though its force of men and equipment had been returned to Detroit.
Having at once brought this fact to the attention of the officer in charge, it was ordered on February 23 to resume work and then proceeded to gather and return its scattered force to the site on March 4. Part of its equipment, which had been returned to Detroit under the order to “ discon *697 tinue,” could not be gotten to the site until April 1, but on April 13 work had to be suspended again to await completion of other work necessary to receive the sash, and on April 26 the officer in charge notified plaintiff that the building would be ready for glazing about May 15, but as late as June 23 he sent a telegram to plaintiff that the entire building had been ready for its work “ since June 19.” The brickwork on the building was not completed until July 3 0, and glazing could not be done until that work was done. Plaintiff commenced work again on July 11 and proceeded uninterruptedly until August 15, when its operations were again suspended because of a lack of glass. It had some time before this delivered at the site the necessary glass, but the same had been broken by a removal to another location of the crates containing it by Government agents without notice to plaintiff. To replace this glass caused some delay. Its Contract was satisfactorily completed on September 21.
It appears that from January 5, 1922, when plaintiff was notified to commence its work on the heat-treatment building, to September 21, when it was completed, a total of 256 days, plaintiff was at work from January 16 to February 9 (23 days), from March 4 to April 13 (39 days), from July 11 to August 15 (34 days), and from September 11 to September 21 (10 days), or a total of 106 days. The slow progress of the work was occasioned by the action of the Government, and the question arises whether the Government should respond for the damages occasioned plaintiff by reason thereof. As already suggested the work was to commence when plaintiff received notice that the building was ready for it, and, conceding that plaintiff could not complain of delay in giving the notice, there was yet an obligation on its part to proceed when the notice was given. And there being such an obligation imposed by the contract, was there not a correlative obligation on the Government to allow the plaintiff to proceed, without improper interference, once the notice that the building was ready had been given ? There have been many cases in this court where the Government has been made to respond in damages for delays in or suspensions of or interference with the *698 contractor’s work caused by unwarranted acts of the Government’s agents.
In Smith"1s case, 94 U. S. 214, it was held that by reason of its improper suspension of the contractors’ work the Government was liable in damages. There being no specified time within which the work should be done, the court said that the law implied it would be completed within a reasonable time and “ that the United States would not unnecessarily interfere to prevent this.” It is further said in the Smith case (p. 217) : “ In Gloria's case, 6 Wall. 546, it was decided that the United States were liable for damages resulting from an improper interference with the work of of a contractor, and in Smoot's case, 15 id. 47, that the principles which govern inquiries as to the conduct of individuals, in respect to their contracts, are equally applicable where the United States are a party. The same rules were applied in the case of the Amoskeag Go., 17 id. 592. Here the work was stopped by order of the United States.” See also Barlow case, 184 U. S. 123, 136; Mueller case, 113 U. S. 153; Behan case, 110 U. S. 338; Houston Construction Co. case, 38 C. Cls. 724, 736.
We think that after the Government had notified plaintiff that the heat-treatment building was ready for the sash and it had commenced its work, it was entitled to proceed without unnecessary interference or suspensions on the part of the Government. The contract did not in terms provide that the Government could suspend the work, once it had authorized it to be commenced. And it is but just that the Government and not the contractor should bear the loss and damage occasioned by the improper stoppages under orders from the officer in charge. If the plaintiff chose to assemble its equipment and working force before being notified by fhe Government that the building was ready, it would have been premature, and the delay in having the building ready would give no cause of action. Cases, supra. But, after being notified that it could proceed, it should have the right to rely on this notification and for any subsequent unwarranted interferences and interruptions the Government should answer, to the extent of the damages naturally and proximately arising therefrom.
*699 1. Plaintiff, when the work was suspended, removed its men back to Detroit and had to return them to the site when ordered to resume, which involved an actual outlay of $328.70. Its subcontractor had to expend $308.75 for transportation back and forth of glazers.
2. The additional expense, resulting to the subcontractor for glazing work growing out of interruptions after the notification of January, 1922, but not the expense resulting before that date, is allowed in the amount of $1,514.92. (See Finding XXII.)
3. The increase of wages (see Finding XXIII) during the years 1920 and 1921, over the wages of 1919, is not an element of recovery, there being no understanding as to when the work would be ready for plaintiff. See Crook case, 59 C. Cls. 593.
4. For the additional time required to maintain its surety bond because of the delays and interruptions in its work on the heat-treatment building after notice to proceed, plaintiff should recover the amount attributable to that period amounting to $302. (Finding XXIY.)
5. Confining the recovery to the period after notice that the heat-treatment building was ready the plaintiff is entitled to the reasonable profit on its expenditures during that period amounting to $406.20 (Finding XXV), but not a profit based upon expenditures or overhead prior to the notice.
6. The retained percentage which the contract authorized out of the contract price amounted to $14,693.19. This is concededly due, since the work was accepted, but was withheld unless plaintiff would execute a final and full release. Nor is this sum subject to the deduction for liquidated damages as claimed by the defendant. The delay for which the liquidated damages were imposed was that caused, near the end of the work, by the necessity to replace glass which had been broken by the carelessness of the Government’s agents after it had been brought- to the site by plaintiff. Having thus produced the cause of the delay the defendant should not hold the plaintiff liable for it.
There are several distinct claims which are disallowed. One of these that the putty shipped in 1919 or early in 1920 *700 to the site by plaintiff had so dried out and hardened that it was of no utility when the heat-treatment building was ready for it. It thus appears that two years elapsed after the shipment and before the notice that the building was ready. For the condition brought about by the delay in having the building ready there can be no recovery under the rules already stated. Plaintiff bought this material at its own risk before any notification that it could proceed. Similar considerations prevent any allowance for the cleaning or repainting of sash. (Finding XIX.)
Plaintiff should have judgment for the items stated, being also mentioned in Findings XY, XX, XXII, XXIV, XXV, and XXVI, but as to all other items of claim the petition should be dismissed. And it is so ordered.
Moss, Judge; Geaham, Judge; Hat, Judge; and Booth, Judge, concur.