### KEOKUK STEEL CASTING CO. v. LAWRENCE.

#### No. 3951.

United States Court of Appeals
Tenth Circuit.

Dec. 29, 1949.

G. C. Spillers, Jr., and G. C. Spillers, Tulsa, Okl. (J. O. Boyd, Keokuk, Iowa, on the briefs), for appellant.

Robert D. Hudson, Tulsa, Okl., for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

This case was before us on a former appeal. Lawrence v. Keokuk Steel Company,[1] 10 Cir., 162 F.2d 929, 934. We there stated the facts reflected by the record on the former appeal and will not again state them in detail.

On December 28, 1939, Lawrence entered into a written contract[2] with Keokuk whereby he agreed to act as the agent of Keokuk in the sale of its products in certain designated territory. For his service, Keokuk agreed to pay Lawrence a commission of five per cent on all of its products sold in such territory. The contract, by its terms, was not transferable and was subject to cancellation by either party on 30 days' notice.

Lawrence was a graduate of the United States Naval Academy. Realizing that Lawrence might be called for naval service, a representative of Keokuk and Lawrence discussed the matter of servicing the territory, should Lawrence be called for naval service, during his absence in such service.

Lawrence was notified to report for active duty in the Navy on September 2, 1941. He continued to perform his part of the contract personally until September 1, 1941.

On August 23, 1941, Lawrence mailed a letter to K. G. Jansson, vice-president of Keokuk, the material portions of which read:

"I was advised that my orders will be mailed on August 25th directing me to report for active duty on September 2d.

"I of course have not lost sight of the fact that you told me you and Mr. Brown had discussed the possibilities of this thing happening about a year ago and that you would carry on with me and service this part of the territory. This was of course a most generous offer on your part and was certainly appreciated by me, however, this would not have been entirely fair to you and with this in mind some time ago I made arrangements to continue my office and business as in the past. This situation is a temporary one of course and when I am returned to civilian life I will naturally have to have a place to light, therefore the following is the case.

"Mr. James F. Lawrence is going to be the active head of my office and business and of course, Mrs. Murray will continue as in the past and in addition, I have Mr. B. E. Gray who will be in the office contacting and servicing the accounts."

1. Hereinafter called Keokuk.

2. Hereinafter called the agency contract.

On August 27, 1941, Jansson mailed a letter to Lawrence reading in part as follows:

"Dear Bob: I wish to acknowledge receipt of your letter of August 23rd as well as confirm my conversation with you Monday.

"Needless to say, we are sorry that you have to give up your present contact with our customers. However, we are sure that the set-up outlined in your letter will take care of the servicing of our customers satisfactorily. Please advise your office that they may call on me at any time if they need any special service in connection with any requests that they may have from our customers."

After negotiations between Keokuk and Lawrence relative to reducing the rate of commission to two and a half per cent had not resulted in agreement, Keokuk, on May 2, 1942, wrote a letter to Lawrence in which it tendered him a new contract to be entered into with a person to be designated by Lawrence, identical with the original agency contract, except the commission rate was reduced to two and a half per cent. Lawrence, in part, replied:

"Based upon your agreement to the effect that our original contract should remain in effect during the duration of the War, I entered the service of the United States Navy. You must understand that my entry into the Service altered all of the affairs of my entire life.

"I shall therefore expect you to perform the agreement which you have already made with me and which you have been carrying out for the past several months."

On May 19, 1942, Keokuk notified Lawrence in writing that the agency contract would be canceled, effective 30 days from the receipt of the notice. The notice was received by Lawrence, May 29, 1942. In the meantime, Lawrence had continued to perform the agency contract in accordance with his letter of August 23, 1941.

On June 11, 1942, Lawrence brought this action against Keokuk to recover damages for breach of contract.

The trial court sustained Keokuk's motion for a summary judgment.

In our opinion on the former appeal, we said:

"* * * we are of the opinion that such letters constituted a modification of the agency contract. Clearly, the agency contract contemplated the personal services of Lawrence. In response to the proposal of Lawrence, the Keokuk Company agreed that the services should be performed by James F. Lawrence and the office staff of Lawrence. The letter of August 23 recited that the Keokuk Company had offered, in the event Lawrence was called for service in the Navy, to carry on with him and service the territory embraced in the agency contract for him. Such letter constituted a modified offer on the part of Lawrence to continue to service the territory through James F. Lawrence and the office staff of Lawrence. The modified offer was accepted by the Keokuk Company by its letter of August 27.

"The clause, 'that you would carry on with me and service this part of the territory' is ambiguous. The language which follows indicates that Lawrence construed it to mean that the arrangement would continue during his service in the Navy. Read in the light of the previous negotiations, the quoted clause might be construed as the recital of an offer on the part of the Keokuk Company to service the territory for Lawrence during his service in the Navy. If so, the period during which the arrangement was to continue was embraced in the modified proposal of Lawrence set forth in his letter of August 23. While the general rule is that parol evidence may not be introduced to contradict, add to, or vary the terms of a written contract, where the language of a written contract is ambiguous, parol evidence of the negotiations preceding and leading up to the making of the written contract, and the circumstances surrounding the execution of the written contract may be introduced to enable the court to arrive at the true intent and meaning expressed in the written contract.

"We are of the opinion that the trial court erred in disposing of the issues with respect to the alleged modification of the agency contract on summary judgment, and that it should have received evidence with

respect to the oral negotiations of the parties prior to August 27, 1941, and, in the light of such evidence, determined the true intent and meaning of the letters of August 23 and August 27."

We reversed the judgment and remanded the cause for further proceedings.

On remand, the case came on for hearing before the court, a jury having been waived.

Lawrence testified that he had a conversation with Jansson, vice-president of Keokuk, in June, 1940; that Jansson inquired with respect to the probability of Lawrence entering the armed forces and asked Lawrence how he stood in the draft; that he replied that he was too old to register and did not anticipate going into the armed services; that Jansson then stated the president of Keokuk had told Jansson to come to Tulsa and tell Lawrence that in the event he should go into the armed forces, Keokuk would carry on with him, service the accounts as if Lawrence were there, pay him his commission, and that he would have a place to light when he came back from the service.

Lawrence further testified that while he could not maintain himself and meet his obligations on the pay which he would receive as an officer in the Navy, relying on the assurance given him by Jansson that he would have a place to light when he came back from the service and would have an income that would assist him in meeting his obligations, he applied for a commission; that he wrote the letter of August 23 to Jansson; that after he had written such letter, he had the telephone conversation with Jansson referred to in Keokuk's letter of August 27; that Jansson in such conversation stated he had received Lawrence's letter; that he congratulated him on going into the Navy; that the arrangement outlined in Lawrence's letter of August 23 was satisfactory; that Keokuk would carry on with Lawrence and endeavor to have a nice business going when Lawrence got back. ·

Lawrence further testified that after such conversation with Jansson, he received the letter of August 27 and made arrangements for his office to carry on the business during his absence; that after he entered the service, he was stationed at Oklahoma City, until May, 1942; that during that time he was in contact with his office in Tulsa; that on April 7, 1942, Jansson came to Oklahoma City and undertook to prevail upon Lawrence to agree to reduce his commission to two and a half per cent; that he refused so to agree; and that Jansson stated Lawrence had a pretty good thing and was making too much money; that while he was directed to cut the commission, it would be only for the time Lawrence was in the service.

Helen Murray, an employee of Lawrence, testified she overheard the conversation between Lawrence and Jansson relative to Lawrence going into the service, and that Jansson stated in the event Lawrence did go into the service, Keokuk would carry on with Lawrence's office as if Lawrence were there, pay him the commission for servicing the accounts, and that Lawrence would have a business to come back to.

The trial court found the facts substantially as stated above and concluded that while the clause in the letter of August 23 "that you would carry on with me and service this part of the territory" is ambiguous, the conversations which took place between Lawrence and Jansson, together with all the surrounding circumstances, disclosed that it was the intention of the parties to enter into a modified written agreement which should continue in effect until Lawrence's discharge from the Navy.

The trial court awarded judgment against Keokuk in favor of Lawrence for the commission earned under the agency contract to May 20, 1949, amounting to $10,267.70.

The findings of the trial court are supported by substantial evidence and are not clearly erroneous. They are, therefore, binding on this court.

The provisions of the two letters, read in the light of the oral evidence, plainly indicated that it was the intention of the parties that the modified agency contract should continue in effect until Lawrence's discharge from the Navy.

The judgment is, therefore, affirmed.