240 F.2d 201
 WUNDERLICH CONTRACTING COMPANY, a corporation; Curlett
Construction Company, a corporation; and Chas. H. Tompkins
Co., a corporation, doing business as a joint venture under
the name of Wunderlich Curlett & Tompkins; Continental
Casualty Company, a corporation; National Surely
Corporation, a corporation; The Travelers Indemnity Company,
a corporation, Appellants,
v.
UNITED STATES of America ex rel. REISCHEL & COTTRELL, a
California corporation; and Martin Bros., a copartnership
consisting of W. L. Martin and John Martin, doing business
as a joint venture under the name of Reischel &
Cottrell-Martin Bros., Appellees.
 No. 5373.
 United States Court of Appeals Tenth Circuit.
 Jan. 2, 1957.
Rehearing Denied March 5, 1957.
 
 Allan E. Mecham and Bryce E. Roe, Salt Lake City, Utah (Elliott Lee Pratt, Salt Lake City, Utah, was with them on the brief), for appellants.
 Lewis C. Teegarden, Los Angeles, Cal. (John S. Boyden, Salt Lake City, Utah, was with him on the brief), for appellees.
 Before BRATTON, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 The defendants Wunderlich Contracting Company, a corporation, Curlett Construction Company, a corporation, and Charles H. Tompkins Company, a corporation, doing business as a joint venture under the name of Wunderlich, Curlett & Tompkins, entered into a contract with the United States to construct a five hundred bed Veterans Administration hospital at Salt Lake City, Utah, for the sum of $7,898,000. The plaintiffs, also a joint venture, doing business as Reischel & Cottrell-Martin Bros., were the successful bidders to do all of the lathing and plastering work for the hospital for the sum of $244,650, and accordingly entered into a lump sum subcontract with the above named defendants to do this portion of the work, according to the plans and specifications submitted to bidders. The defendants National Surety Corporation, a corporation, Continental Casualty Company, a corporation, and The Travelers Indemnity Company, a corporation, furnished payment bonds as required by the Miller Act. 40 U.S.C.A. § 270b(a) et seq. The plaintiffs brought this action to recover a balance claimed to be due for the labor and materials which they furnished on the construction of the hospital.[1] The trial court from that due to not less than 6,000 substantial changes required to be made in the plans and specifications during construction, the structure which was actually built was not the same as that originally proposed; that the unprecedented and unreasonable number of changes in the plans and specifications and dislocation of work greatly increased the costs to plaintiffs in completing the work and increased the time of performance by 50%; that the performance of the plaintiffs was not rendered under the subcontract, but that the hospital was built under an entirely different set of plans and specifications than those submitted to the plaintiffs by the defendants for bidding purposes, and in consideration of defendants' implied promise to pay therefor. The effect of the court's holding is that the subcontract was abandoned. The defendants concede that considerable work was done by plaintiffs for which they were entitled to compensation over and above the contract price. They contend, however, that all the work was done pursuant to the subcontract and that they are liable only as to the provisions of the contract. The court found that the reasonable value of plaintiffs' services was $340,379,58, of which $270,895.82 had been paid, leaving a balance due of $69,483.76. Judgment was entered for this amount, with interest from August 13, 1952.
 
 
 2
 The first issue to be determined is whether the aforementioned findings are sustained by the evidence. Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A., provides that in all actions tried upon the facts, without a jury, the court's findings of fact shall not be set aside unless clearly erroneous. Carter Oil Co. v. McCasland, 10 Cir., 190 F.2d 887, certiorari denied 342 U.S. 870, 72 S.Ct. 113, 96 L.Ed. 654; American Home Fire Assur. Co. v. Mid-West Enterprise Co., 10 Cir., 189 F.2d 528. Where the evidence and reasonable inferences fairly to be drawn therefrom are sufficient to support the findings of the trial court in a non-jury case, they will not be overturned on appeal unless clearly erroneous. Beard v. Achenbach Memorial Hospital Assoc., 10 Cir., 170 F.2d 859. Also, if it is established by facts from which reasonable men might draw different inferences, appellate courts may not substitute their judgment for that of the trial court. Van Dreal v. Van Dreal, 10 Cir., 214 F.2d 715; Keokuk Steel Casting Co. v. Lawrence, 10 Cir., 178 F.2d 788, certiorari denied 399 U.S. 931, 70 S.Ct. 668, 94 L.Ed. 1351; Widney v. United States, 10 Cir., 178 F.2d 880; Carnes v. United States, 10 Cir., 186 F.2d 648.
 
 
 3
 A careful examination of the record discloses substantial evidence to support these findings. The evidence is without conflict that the original plans, drawings and specifications were completely overhauled and changed and that there were not less than 6,000 changes made in them. The completion date under the original plans was July 31, 1951, but plaintiffs, because of confusion in the plans and specifications and the changes made, were not able to complete their work until August 13, 1952, and then at a much higher cost. In addition to other evidence, defendants' Project Engineer, who the record disclose knew more about the building then anyone else, testified that in his opinion the building which plaintiffs lathed and plastered was not the same building as that contemplated by the original plans. Colonel Thomas, who had had vast experience in government construction work, was employed by defendants as Assistant Project Manager for the construction of the hospital. He testified that in his experience he had never seen anything like the number of changes made in plans and specifications and, as far as the plastering was concerned, they were operating pretty much under a new set of plans. The record discloses that throughout the contract the defendants made claim to the United States to be paid for specific work performed by the plaintiffs which was not contemplated when the subcontract was entered into. It is insisted that those claims were made pursuant to the provisions of the prime contract and the subcontract, and that many of them were pending at the time of trial.
 
 
 4
 The defendants contend that the contract as a whole contemplated that the hospital might not be built in exact accordance with the submitted plans, drawings and specifications, and made provision for variations which bound the contractor. The prime contract had the usual provisions for change-order work and for extras, and provided a method by which the United States would pay for this type of work. It is urged that the evidence discloses that plaintiffs did rely on the contract in carrying out the work, therefore cannot avoid its terms even though they might have had grounds for rescission. Stated differently, the defendants say that plaintiffs had a contract to do certain work on this project and if the changes were such that their required work was not that which they had agreed to do, they should have rescinded, and having elected to continue, they are bound by the contract. The defendants rely on a line of decisions which hold that even though there were grounds for a rescission of the contract, a party electing to proceed without rescission is bound by the terms of the contract. Typical of these decisions are Lichter v. William R. Goss Co., 7 Cir., 232 F.2d 715, and Frailey v. McGarry, 116 Utah 504, 211 P.2d 840. In most of these cases it is assumed that the work was performed under the subcontract.
 
 
 5
 In view of the court's finding, which is supported by substantial evidence, that the work performed by the plaintiffs was not that contemplated by the parties when they entered into the subcontract, the rule of the above cases is not applicable. Under these findings, we think the rule of Salt Lake City v. Smith, 8 Cir., 104 F. 457, controls. That case arose in Utah and grew out of a contract whereby the plaintiffs agreed to furnish labor and materials to construct a covered conduit in connection with the water system of Salt Lake City. As the work progressed, the City Engineer continuously required substantial changes in the plans, and the plaintiffs were required to construct a conduct which was entirely different from that contemplated by the original contract, and plaintiffs sued for the reasonable value of their services, which was substantially more than the amount provided for in the contract. The question was whether the work and materials fell within or without the plaintiffs' contract with the city. It was held that the labor and materials furnished were not contemplated by the parties when they made their agreement, therefore the contract did not control and the plaintiffs could recover the reasonable value of their services. It was held that defendants had the right to require the plaintiffs to perform the subcontract, but they had no right to require them to perform large quantities of work entirely different in character and cost from that originally contemplated by the parties when they made their contract. There was no meeting of the minds of the parties to do work other than that contemplated by the contract, and if such work was required and the defendants received the benefit of it, plaintiffs were entitled to recover the reasonable value. Wilson v. Salt Lake City, 52 Utah 506, 174 P. 847, and Drainage Dist. No. 1 v. Rude, 8 Cir., 21 F.2d 257, are to the same effect.[2]
 
 
 6
 A contractor who bids for work has the right to rely on the plans and specifications submitted to him for bidding purposes. The rights of the parties are to be measured by them. It is only through the plans and specifications that he can make an intelligent bid. Ryan v. Curlew Irr. & Res. Co., 36 Utah 382, 104 P. 218. Burdens other than those contemplated by the contract, may not be placed upon the contractor without additional compensation. Continental Casualty Co. v. Schaefer, 9 Cir., 173 F.2d 5, certiorari denied 337 U.S. 940, 69 S.Ct. 1517, 93 L.Ed. 1745.
 
 
 7
 We recently held that an action in quantum meruit is available in Miller Act cases. Southern Painting Co. of Tenn. v. United States, 10 Cir.,222 F.2d 431; St. Paul-Mercury Indemnity Co. v. United States for Use of Jones, 10 Cir., 238 F.2d 917. Assuming this right to exist, defendants urge that the evidence is insufficient to sustain the amount found to be the reasonable value of the services and materials furnished. We do not agree with this contention. In cases like this, reasonable value of services and materials is generally considered to be the amount for which they could be obtained under like circumstances. United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168; United States for Use of Susi Contracting Co. v. Zara Contracting Co., 2 Cir., 146 F.2d 606; Schwasnick v. Blandin, 2 Cir., 65 F.2d 354; 5 Williston on Contracts, Perm. Ed., § 1485, p. 4146, § 1459, p. 4077, Footnote 5; Restatement, Contracts, § 347, Comment c; 58 Am.Jur., Work and Labor, § 10.
 
 
 8
 There was introduced in evidence an accountant's report taken from plaintiffs' books which showed that the actual cost of the work, including overhead and profit, was $340,379.58. Of this amount there was $69,483.76 shown to be due. The items making up this balance were shown to be in addition to those for which payment had been made. There was testimony by one of the officers of the plaintiffs, and defendants' Project Engineer agreed, that the charges for those items, with few exceptions, were fair and reasonable. There is no evidence that plaintiffs had been overpaid at the time these latter services were rendered. Furthermore, defendants presented a claim to the United States for these services, usually in the identical amounts claimed by the plaintiffs. We do not hold that the filing and presentation of these claims estopped defendants to deny their reasonableness, but the trial court was justified in considering them in arriving at reasonable value. There is no evidence that the claims were unreasonable. The real dispute appears to be that of liability.
 
 
 9
 The appellants assign as error the rulings of the court on the admissibility of evidence. We have examined these assignments and find them to be without merit. The case was tried to the court without a jury, and we feel satisfied that the trial court fully understood, as we understand, the contentions of the parties and the controlling issues of the case.
 
 
 10
 Finally, it is contended that the court erroneously allowed interest from August 13, 1952, the date upon which plaintiffs' claim was found to be due and payable. In Southern Painting Co. of Tenn., supra, we held that the right to interest in ordinary Federal Court cases is to be determined by State law. The rule in Utah is that the right to interest is not to be determined by whether the damages are liquidated or unliquidated, 'but whether the injury and consequent damages are complete'. Wilson v. Salt Lake City, 52 Utah 506, 174 P. 847, 851; Wheatley v. Oregon Short Line R. Co., 49 Utah 105, 162 P. 86; Fell v. U.P. Ry. Co., 32 Utah 101, 88 P. 1003, 28 L.R.A.,N.S., 1. There was no error in the award of interest. The work was completed on August 13, 1952, and the balance became due on that date.
 
 
 11
 Affirmed.
 
 
 
 [1]
 The complaint is in three causes of action, each presenting a different theory for the recovery of the same amount. The first cause of action alleges that the sum of $82,657.66 is due for labor and materials furnished under the terms of the contract. The second cause of action appears to be for damages caused by a breach of contract. The third cause of action was the balance due for the reasonable value of plaintiffs' performance. The $82,657.66 figure in the complaint was reduced to $69,483.76
 
 
 [2]
 In discussing the Salt Lake City case, it was said in Montrose Contracting Co. v. County of Westchester, 2 Cir., 80 F.2d 841, 843: 'As pointed out in the Salt Lake City Case, in interpreting such clauses, the great desideratum is to ascertain the terms upon which the minds of the parties met and the sense in which they were used when the parties made the agreement. There a stipulation in the contract provided that the contractor or its engineers could make any necessary or desirable alteration in the work required and the contractor would be paid therefor at the contract rate. The effect of this broad clause was held to be limited by the subject matter of the contract and the intention of the parties when it was made to such modifications of the work as were then contemplated. It did not cover a radical change in the nature or cost of the work or materials required. For all work and materials required by such uncontemplated changes in the plans, the contractor recovered the reasonable value, notwithstanding the agreement. And in sustaining a recovery for the contractor the court said, at page 464 of 104 F.: 'It is conceded that the literal terms of the contract, when divorced from reason, from the object contemplated by the parties, from their situation, and from their intention, are so general and unlimited as to permit this to be done. But it is as clear as the sun at noon in a cloudless sky that the minds of these parties never met on such a proposition, and that they never contemplated or intended to make any such contract.' * * *.'